## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAMELA J. HARRIS, ELLEN BRONFELD, CAROLE GULO, MICHELLE HARRIS, WENDY PARTRIDGE, THERESA RIFFEY, GORDON P. STIEFEL, SUSAN WATTS, PATRICIA WITHERS, STEPHANIE YENCER-PRICE, and a class of similarly situated, <br>      Plaintiffs, <br><br> v. <br><br> GOVERNOR PAT QUINN, in His Official Capacity as Governor of the State of Illinois, SEIU HEALTHCARE ILLINOIS & INDIANA, SEIU LOCAL 73, and AFSCME COUNCIL 31, <br>      Defendants. | ) ) ) ) **CASE NO.** ) ) ) ) ) ) ) **COMPLAINT–CLASS ACTION** ) ) ) ) ) ) ) |

William L. Messenger
National Right to Work Legal Defense
 Foundation
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
(703) 321-9319 (fax)
wlm@nrtw.org

*Counsel for Plaintiffs*

## PRELIMINARY STATEMENT

Plaintiffs are individuals who provide home care to disabled individuals enrolled in Illinois Medicaid-waiver programs. They are not employed by the State of Illinois, but by the individuals who they serve. Nevertheless, under former Illinois Governor Blagojevich, the State designated a union to be the representative of one group of home care providers vis-a-vis the State, and is compelling these providers to financially support that union as their state-appointed representative. Current Illinois Governor Quinn is attempting to impose a similar scheme of compulsory political representation on a second group of home care providers.

Compelling home care providers to support an entity for the purposes of speaking to and petitioning the state infringes on the fundamental rights of providers to free association, free speech, and to petition the government for a redress of grievances under the First Amendment to the United States Constitution. This suit by home care providers seeks declaratory, injunctive, and monetary relief under 42 U.S.C. § 1983 to remedy this violation of their Constitutional rights.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to adjudicate this case pursuant to both 28 U.S.C. § 1331, because it arises under the United States Constitution, and 28 U.S.C. § 1343, because Plaintiffs seek relief under 42 U.S.C. § 1983. This Court also has the authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief based thereon.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1392 because Defendants maintain offices and do business within this judicial district and events giving rise to this action took place in this judicial district.

## PARTIES

3. Plaintiffs are individuals who provide home care services to disabled individuals enrolled in one of two state Medicaid programs: (1) the Home Services Program administered by the Division of Rehabilitation Services of the Illinois Department of Human Services, ("Rehabilitation Program"); or (2) the Home Based Support Services Program for Mentally Disabled Adults administered by the Division of Developmental Disabilities of the Illinois Department of Human Services ("Disabilities Program"). More specifically:

    3a. Plaintiff Pamela J. Harris provides home care services to her son Joshua, who participates in the Disabilities Program. Joshua requires constant care and supervision due to Rubinstein-Taybi syndrome, a rare genetic syndrome that adversely affects his cognitive abilities, muscular and skeletal systems, and causes severe intellectual and developmental disabilities.

    3b. Plaintiff Michelle Harris provides home care services to her brother Joshua, who participates in the Disabilities Program and whose condition is described in paragraph 3a.

    3c. Plaintiff Ellen Bronfeld provides home care services to her son Noah, who participates in the Disabilities Program. Noah requires constant care and

supervision for his safety and to maximize his quality of life due to severe autism.

3d. Plaintiff Carole Gulo provides home care services to her son Jonathon, who participates in the Disabilities Program. Jonathon requires constant care and supervision due to Batten disease (Neuronal Ceroid Lipofuscinoses), a terminal neurological disorder that causes seizures and declining cognitive, visual, and motor skill functions.

3e. Plaintiff Wendy Partridge provides home care services to her son, who participates in the Disabilities Program.

3f. Plaintiff Theresa Riffey provides home care services to her sister, who participates in the Rehabilitation Program due to quadriplegia.

3g. Plaintiff Gordon P. Stiefel provides home care services to his daughter Pamela, who participates in the Disabilities Program. Pamela requires constant care and supervision due to Rett syndrome, a neurodevelopmental disorder that results in profound cognitive and motor developmental disabilities.

3h. Plaintiff Susan Watts provides home care services to her daughter Elizabeth, who participates in the Rehabilitation Program. Elizabeth requires constant care and supervision due to quadriplegic cerebral palsy, a stroke, and numerous surgeries.

3i. Plaintiff Patricia Withers provides home care services to her son Derek, who participates in the Disabilities Program. Derek requires constant care and supervision due to Asperger syndrome and other disorders that severely impair his

judgment and organizational skills.

    3j. Plaintiff Stephanie Yencer-Price provides home care services to an individual who participates in the Rehabilitation Program.

4. Defendant Governor Pat Quinn is sued in his official capacity as the Governor and chief executive officer of the State of Illinois.

5. Defendants SEIU Healthcare Illinois & Indiana and SEIU Local 73 (collectively "SEIU") are affiliated labor unions that transact business and maintain their main offices in this judicial district.

6. Defendant American Federation of State, County, and Municipal Employees Council 31 ("AFSCME") is a labor union that transacts business and has one of its two main offices in this judicial district.

**FACTS**

**I.    Home Care Programs**

    **A.    The Rehabilitation Program**

7. The Home Services Program is a state Medicaid waiver program administered by the Division of Rehabilitation Services of the Illinois Department of Human Services ("Rehabilitation Program"). *See* 20 ILCS 2405 *et seq.*; 89 Ill. Admin. Code §§ 676 *et seq*. The Rehabilitation Program subsidizes the costs of home-based services for individuals with severe disabilities to prevent their unnecessary institutionalization.


8. The maximum monthly subsidy to which a participant in the Rehabilitation Program is entitled to purchase home-based services, or "service cost maximum," is determined by a formula delineated at 89 Ill. Admin. Code § 679.50.

9. Participants in the Rehabilitation Program may use some or all of their subsidy to employ personal assistants or personal care attendants (collectively "Personal Assistants"), who help with household tasks, personal care, and certain routine health care procedures.

10. Personal Assistants are employed by participants in the Rehabilitation Program, who are their employers. Program participants may select and hire any individual who meets certain minimal requirements to serve as their Personal Assistant. Program participants supervise, discipline, and otherwise control the terms and conditions of employment of their Personal Assistants, subject to state minimum wage and qualification requirements.

11. Personal assistants are not employed by the State of Illinois. The State does not control or have input in the employment relationship between program participants and their Personal Assistants, other than to require a minimum wage rate. The State Rehabilitation Program merely subsidizes a program participant's costs of hiring a Personal Assistant by making semi-monthly payments to Personal Assistants based on the minimum wage rate.

12. Approximately 20,000 Personal Assistants are employed by participants in the Rehabilitation Program at any given time.

### B. The Disabilities Program

13. The Home Based Support Services Program for Mentally Disabled Adults ("Disabilities Program") is a state Medicaid-waiver program administered by the Division of Developmental Disabilities of the Illinois Department of Human Services. *See* 405 ILCS 80/20-1 *et seq*.; 59 Ill. Admin. Code §§ 117 *et seq*. The program subsidizes the cost of home-based services for adults with severe mental disabilities to prevent unnecessary institutionalization.

14. The maximum subsidy that a participant in the Disabilities Program can receive is set by statute as a percentage of a participant's social security payments. *See* 405 ILCS 80/2-6.

15. Participants in the Disabilities Program may use some or all of their subsidy to hire individuals to provide personal care and certain health services to them in their home (hereinafter "Providers").

16. Providers are employed by participants in the Disabilities Program, who are their employers. Program participants select, hire, fire, supervise, discipline, and otherwise control the terms and conditions of employment of their Providers. Program participants generally exercise these functions through a legal guardian.

17. Providers are not employed by the State of Illinois. The State does not control the employment relationship between program participants and their Providers. The State merely subsidizes a participant's costs of hiring a Provider.

18. Approximately 4,500 Providers serve participants in the Disabilities Program.

## II. Personal Assistants in the Rehabilitation Program Are Compelled to Support the SEIU as Their State-Appointed Representative

### A. The State Designates the SEIU as the Political Representative of Personal Assistants Vis-a-Vis the State with Respect to a Limited Aspect of the Rehabilitation Program

19. In 2003, former Illinois Governor Blagojevich initiated a two-step scheme to force Personal Assistants into the SEIU in exchange for the union's political support and campaign contributions. Governor Blagojevich first designated the SEIU as the representative of Personal Assistants vis-a-vis his administration, and then forced Personal Assistants to pay the SEIU for the compulsory political representation imposed upon them.

20. On 7 March 2003, Governor Blagojevich issued Executive Order 2003-08 ("EO 2003-08"). EO 2003-08 recognized that Personal Assistants are not state employees, and that participants in the Rehabilitation Program control their hiring, in-home supervision, and termination. Nevertheless, EO 2003-08 provided that:

> The State shall recognize a representative designated by a majority of the personal assistants as the exclusive representative of all personal assistants, accord said representative all the rights and duties granted such representatives by the Illinois Public Labor Relations Act, 5 ILCS 315/1 et seq., and engage in collective bargaining with said representative concerning all terms and conditions of employment of personal assistants working under the Homes Services Program that are within the State's control.

21. On 16 July 2003, Governor Blagojevich codified EO 2003-08 by signing Public Act 93-0204, which amended Section 3 of the Disabled Persons Rehabilitation Act to provide as follows:

> Solely for the purposes of coverage under the Illinois Public Labor Relations Act (5 ILCS 315), personal care attendants and personal assistants providing services under the Department's Home Services Program shall be considered to be public employees and the State of Illinois shall be considered to be their employer as of the effective date of this amendatory Act of the 93rd General Assembly, but not before. The State shall engage in collective bargaining with an exclusive representative of personal care attendants and personal assistants working under the Home Services Program concerning their terms and conditions of employment that are within the State's control. Nothing in this paragraph shall be understood to limit the right of the persons receiving services defined in this Section to hire and fire personal care attendants and personal assistants or supervise them within the limitations set by the Home Services Program. The State shall not be considered to be the employer of personal care attendants and personal assistants for any purposes not specifically provided in this amendatory Act of the 93rd General Assembly, including but not limited to, purposes of vicarious liability in tort and purposes of statutory retirement or health insurance benefits. Personal care attendants and personal assistants shall not be covered by the State Employees Group Insurance Act of 1971 (5 ILCS 375/).

20 ILCS 2405/3(f). Public Act 93-0204 also made conforming amendments to the Illinois Public Labor Relations Act, 5 ILCS 315/1, *et seq*.

22. On or around 26 July 2003, the State designated SEIU Healthcare Illinois & Indiana as the exclusive representative of Personal Assistants with respect to terms and conditions of their employment within the State's control under the Rehabilitation Program. These terms and conditions are limited principally to the minimum compensation paid to Personal Assistants, as Personal Assistants are employed and supervised by participants in the Rehabilitation Program.

23. In this manner, the State designated SEIU Healthcare Illinois & Indiana as the compulsory representative of Personal Assistants for the purpose of speaking to, petitioning, and otherwise lobbying the State and its officials with respect to limited

aspects of the State's Rehabilitation Program.

### B. The State Compels Personal Assistants to Financially Support the SEIU As Their State-Designated Representative

24. The Illinois Department of Human Services and Central Management Services are parties to an "Agreement" with SEIU Healthcare Illinois & Indiana effective from 1 January 2008 through 30 June 2012. This Agreement is the successor to an earlier agreement between the entities.

25. The Agreement requires that Personal Assistants employed by participants in the Rehabilitation Program pay a compulsory fee to SEIU Healthcare Illinois & Indiana. Specifically, Section 6 of Article X of the Agreement states:

> Effective on the pay period beginning November 1, 2003, all Personal Assistants who are not members of the Union shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members. The Union shall certify the Personal Assistants' monthly proportionate share to the State and the State shall deduct said amount from the wages of the Personal Assistants and remit it to the Union. The Union shall indemnify, defend, and hold the State harmless against any claim, demand, suit or liability arising from any action taken by the State in complying with this section.

26. At all times relevant to this Complaint, the State has deducted compulsory union fees from monies owed to Personal Assistants for caring for participants in the Rehabilitation Program and remitted those monies to SEIU Healthcare Illinois & Indiana. These and similar deductions will continue until enjoined.

27. SEIU Healthcare Illinois & Indiana is acting under color of state law by causing, participating in, and accepting the compulsory deduction of union fees from monies

owed to Personal Assistants.

28. SEIU Healthcare Illinois & Indiana and its affiliates take at least $3,600,000 in fees from Personal Assistants each year by means of these deductions, with the actual yearly windfall likely more than double this amount.

29. In the manner described above, Defendants are compelling Personal Assistants to financially support SEIU Healthcare Illinois & Indiana and its affiliates as their state-designated representative for purposes of speaking to, petitioning, and otherwise lobbying the State and its officials with respect to limited aspects of the Rehabilitation Program. No compelling or otherwise sufficient government interest justifies the compulsory political representation imposed upon Personal Assistants.

### III. Governor Quinn's Campaign to Designate The SEIU As The Political Representative of Providers in the Disabilities Program

30. In June 2009, Illinois Governor Quinn initiated a scheme to force Providers in the Disabilities Program into the SEIU in exchange for the SEIU's political support and campaign contributions.

31. On 29 June 2009, Governor Quinn issued Executive Order 2009-15. The order is similar to former Governor Blagojevich's EO 2003-08, and provides in relevant part that:

> The State shall recognize a representative designated by a majority of the individual providers in the Home-Based Support Services Program as the exclusive representative of all personal assistants, accord said representative all the rights and duties granted such representatives by the Illinois Public Labor Relations Act, 5 ILCS 315/1 et seq., and engage in collective bargaining with said representative concerning all terms and conditions of the provision of services within the State's control, including the setting of minimum rates

of payment to individual providers.

32. SEIU Local 73 petitioned for an election to become the exclusive representative of Providers pursuant to EO 2009-15. AFSCME intervened in this election. A mail ballot election was scheduled for 1 October 2009 to 19 October 2009.

33. Governor Quinn supported SEIU Local 73's campaign against Providers, including by illegally attempting to gag private parties from speaking against SEIU Local 73. Specifically, the Illinois Department of Human Services sent letters to service facilitators—private persons and entities that assist participants in the Disabilities Program—that threatened their contractual status with the State if they spoke about or against unionization.

34. If unionized under EO 2009-15, Providers will be forced, as a condition of serving individuals in the Disabilities Program, to financially support the SEIU or AFSCME as their state-designated representative for the purposes of speaking to, petitioning, and otherwise lobbying the State and its officials with respect to limited aspects of the Disabilities Program, as this is the principal purpose of the scheme.

35. Plaintiffs Pamela Harris, Gordon Steifel, and Ellen Bronfeld devoted time and money to campaign against SEIU Local 73 and AFSCME in the mail ballot election. For example, Plaintiff Harris alone spent $1,342.02 for this purpose.

36. SEIU Local 73 and AFSCME lost the mail ballot election that concluded on 19 October 2009. However, under EO 2009-15, the SEIU and AFSCME can request another election, or become the state-designated representative of Providers without

an election after they collect a sufficient number of cards from Providers. On information and belief, the SEIU and AFSCME are continuing their efforts to impose themselves on Providers under EO 2009-15.

37. Plaintiffs Pamela Harris, Ellen Bronfeld, Carole Gulo, Michelle Harris, Wendy Partridge, Gordon P. Stiefel, and Patricia Withers are subject to an actual and ongoing threat of being compelled both to support the SEIU and AFSCME as their state-designated representative for the purposes of speaking to, petitioning, and otherwise lobbying the State and its officials, and to having to expend time and money to prevent this infringement on their Constitutional rights.

## CLASS ALLEGATIONS

38. This is a class action brought by named Plaintiffs Theresa Riffey, Susan Watts, and Stephanie Yencer-Price for themselves and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(1)(A), (b)(2), and/or 23(b)(3). The class consists of all individuals who: (1) are Personal Assistants in the Rehabilitation Program; and, (2) have had any union dues or fees deducted from the monies paid to them for caring for participants in the Rehabilitation Program and remitted to SEIU Healthcare Illinois & Indiana and its affiliates. The class includes everyone who comes within the class definition at any time from two years prior to the commencement of this action until the conclusion of this action.

39. The number of persons in the class exceeds 20,000. Their number makes joinder of the entire class impractical.

40. There are questions of fact and law common to all class members. Factually, all class members are being compelled to support SEIU Healthcare Illinois & Indiana as their state-designated representative for the purposes of speaking to, petitioning, and otherwise lobbying the State and its officials with respect to limited aspects of the Rehabilitation Program. The question of law is the same for all class members: does this violate their rights under the United States Constitution?

41. The claims of Plaintiffs' Theresa Riffey, Susan Watts, and Stephanie Yencer-Price are typical of other members of the class, in that their Constitutional rights are all being infringed upon in a similar manner by being compelled to support SEIU Healthcare Illinois & Indiana as their state-designated representative for the purposes of speaking to, petitioning, and otherwise lobbying the State and its officials with respect to limited aspects of the Rehabilitation Program.

42. Plaintiffs' Theresa Riffey, Susan Watts, and Stephanie Yencer-Price can adequately represent the interests of the class. They have no interests antagonistic to the class, all of whom have a cognizable interest in not being compelled to support a state-designated lobbyist in violation of their Constitutional rights. Plaintiffs' attorneys are provided *pro bono* by a well-established legal-aid organization and are experienced in representing individuals whose constitutional rights are infringed upon when compelled to support a union.

43. A class action can be maintained under Rule 23(b)(1)(A), because separate actions by class members will create a risk of inconsistent adjudications that would

establish incompatible standards of conduct for the Defendants with respect to whether it is lawful to compel Personal Assistants to support SEIU Healthcare Illinois & Indiana.

44. A class action can be maintained under Rule 23(b)(1)(B) because an adjudication that determines whether it is constitutional to compel a class member to support the SEIU Healthcare Illinois & Indiana will, as a practical matter, be dispositive of the interests of other class members.

45. A class action can be maintained under Rule 23(b)(3), because the common questions of law and fact identified in paragraph 40 of the Complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are suffering the same violation of their Constitutional rights, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

## CLAIMS FOR RELIEF

### COUNT I

*(Violation of Rights of Personal Assistants under 42 U.S.C. § 1983 and the United States Constitution)*

Plaintiffs reassert the foregoing and further allege:

46. By compelling Personal Assistants in the Rehabilitation Program, specifically Plaintiffs Theresa Riffey, Susan Watts, Stephanie Yencer-Price, and members of the

Plaintiff class, to support SEIU Healthcare Illinois & Indiana and its affiliates as their state-designated representative for the purposes of speaking to, petitioning, and otherwise lobbying the State and its officials with respect to limited aspects of the Rehabilitation Program, Defendants (other than AFSCME) are abridging and violating the rights of Personal Assistants to freedom of association, freedom of speech, and to petition the government for redress of grievances under the First Amendment to the United States Constitution, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

47. Unless enjoined by this Court, Plaintiffs Theresa Riffey, Susan Watts, Stephanie Yencer-Price, and members of the Plaintiff class will continue to suffer irreparable harm, damage, and injury for which there is no adequate remedy at law.

## COUNT II

*(Threatened Violation of Rights of Providers under 42 U.S.C. § 1983
and the United States Constitution)*

Plaintiffs reassert the foregoing and further allege:

48. By threatening to compel Plaintiffs Pamela Harris, Ellen Bronfeld, Carole Gulo, Michelle Harris, Wendy Partridge, Gordon Stiefel, and Patricia Withers to support the SEIU or AFSCME as their state-designated representative for the purposes of speaking to, petitioning, and otherwise lobbying the State and its officials with respect to limited aspects of the Disabilities Program, Defendants are threatening to abridge and violate their rights to freedom of association, freedom of speech, and to petition the government for redress of grievances under the First Amendment to the

United States Constitution, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

49. Plaintiffs Pamela J. Harris, Ellen Bronfeld, Carole Gulo, Michelle Harris, Wendy Partridge, Gordon P. Stiefel, and Patricia Withers are subject to an actual and ongoing threat of irreparable harm and injury, for which there is no adequate remedy at law, that is inherent in a violation of their Constitutional rights.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Court do the following:

A. Issue a permanent injunction that:

    (1) enjoins Defendants from compelling or otherwise causing Personal Assistants and Providers to support the SEIU, AFSCME, or any other representative designated by the State;

    (2) enjoins enforcement of Public Act 93-0204, EO 2003-08, and EO 2009-15 for the purpose of compelling or causing Personal Assistants or Providers to support the SEIU, AFSCME, or any other representative designated by the State;

    (3) voids and rescinds Section 6 of Article X of the Agreement referenced in paragraph 25 of the Complaint;

B. Issue declaratory judgments that:

    (1) it is unconstitutional to compel Personal Assistants and Providers to support the SEIU, AFSCME, or any other representative designated by the State;

    (2) Public Act 93-0204, EO 2003-08, and EO 2009-15 are unconstitutional to

the extent that they authorize or permit the State of Illinois, and any entity acting in conjunction with the State, to compel or cause Personal Assistants and Providers to support the SEIU, AFSCME, or any other representative designated by the State.

C. Award monetary damages to:

(1) Plaintiffs Theresa Riffey, Susan Watts, Stephanie Yencer-Price and each member of the Plaintiff Class in an amount equal to the union fees taken from the monies owed to them for caring for participants in the Rehabilitation Program and remitted to SEIU Healthcare Illinois & Indiana and of its affiliates, with interest, and hold the SEIU liable for said damages;

(2) Plaintiffs Pamela Harris, Ellen Bronfeld, Carole Gulo, Michelle Harris, Wendy Partridge, Gordon Stiefel, and Patricia Withers for any monies that they spent, or spend in the future, to prevent the imposition of the SEIU or AFSCME as their representative under EO 2009-15 or similar provisions, with interest, and hold the SEIU and AFSCME jointly and severally liable for said damages.

D. Award nominal damages to each Plaintiff and member of the Plaintiff Class.

E. Award Plaintiffs their costs and reasonable attorneys' fees, pursuant to the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988.

F. Grant such other and additional relief as the Court may deem just and proper.

Dated this 22nd day of April 2010.

/s/ William L. Messenger
William L. Messenger
National Right to Work Legal Defense
  Foundation
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
(703) 321-9319 (fax)
wlm@nrtw.org

*Attorney for Plaintiffs*

Michael Haugh
Veverka Rosen & Haugh
180 N. Michigan Ave 900
Chicago, Illinois
312.372.3665
verohalaw@prodigy.net

*Local Counsel for Service Pursuant to Local Rule 83.15*