UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA RIFFEY, SUSAN WATTS, and STEPHANIE YENCER-PRICE, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNOR BRUCE RAUNER and SEIU HEALTHCARE ILLINOIS & INDIANA, <br><br> Defendants. | No. 10 CV 02477 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are personal assistants who provide in-home care for individuals through the Illinois Department of Human Services Home Services Program. The State of Illinois pays the plaintiffs, and they are represented by defendant SEIU Healthcare Illinois & Indiana for purposes of collective bargaining with the state. Plaintiffs are not members of the union (nor are they public employees), but until recently, they were compelled to pay to the union a "fair-share" fee in order to support its collective bargaining efforts. Plaintiffs filed suit to object to the deduction of those fees as a violation of their First Amendment rights. The Supreme Court, in *Harris v. Quinn*, 134 S.Ct. 2618 (2014), agreed with plaintiffs and held that the fair-share fee procedures violated the First Amendment. Now on remand from the Supreme Court—with an amended complaint adjusting the named

plaintiffs and substituting the current governor of Illinois as a defendant—plaintiffs seek a refund of the fair-share fees paid to the union.

Plaintiffs move to certify a class consisting of all personal assistants who, at any point in time from April 22, 2008, to the present, were not members of the union and who had fair-share fees deducted from payments made to them under Illinois's Home Services Program without their prior, written authorization. They further request that their attorneys, including attorneys from the National Right to Work Legal Defense Foundation, be appointed class counsel.

The central First Amendment issue in this case has been resolved by the Supreme Court. But there are a few issues still on the table. Whether defendants' conduct injured the plaintiffs, whether the affirmative defenses have merit, and what is the appropriate remedy, if any, are all questions to be decided. While there are certain common topics that may be suitable for class-wide resolution, individualized questions predominate on the most pressing and important issue—whether and how much money should be refunded to people who had fair-share fees deducted from their pay. Plaintiffs' motion for class certification is denied.

**I.     Legal Standards**

A plaintiff seeking to certify a class under Rule 23 of the Federal Rules of Civil Procedure must first meet the "implicit requirement" that the class is defined clearly and that membership is defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). The plaintiff must also meet the four requirements of Rule 23(a)—numerosity, adequacy of representation,

commonality, and typicality. *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009). Finally, the plaintiff must satisfy the requirements of at least one subsection of Rule 23(b). *Id*. Because plaintiffs seek to certify a class under Rule 23(b)(3), they must show that issues common to the class members predominate over questions affecting only individual members, and that a class action is superior to other available adjudication methods. Fed. R. Civ. P. 23(b)(3); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

A party seeking class certification "must affirmatively demonstrate" compliance with Rule 23. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Compliance with each requirement must be shown by a preponderance of the evidence. *Messner*, 669 F.3d at 811. A class may be certified only if a district court is "satisfied, after a rigorous analysis," that compliance with Rule 23 has been shown, even if the analysis entails some overlap with the merits of the underlying claims. *Wal-Mart Stores, Inc.*, 564 U.S. at 350–51; *see also Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010). And if a class is certified, the district court must also appoint class counsel. Fed. R. Civ. P. 23(g).

## II. Background

Under the Illinois Department of Human Services Home Services Program, sometimes called the Rehabilitation Program, certain individuals who require in-home care can hire personal assistants, who are paid by the state. 20 ILCS § 2405/3.

3

The statute provides that the personal assistants are considered public employees only for the purposes of collective bargaining with the state, and SEIU serves as their exclusive representative. *Id*. The union is obligated to represent all personal assistants—both members of the union and nonmembers alike. 5 ILCS §§ 315/6, 315/8.

Personal assistants who are members of the union, naturally, pay union dues in exchange for their membership. But until recently, the collective bargaining agreements between the union and Illinois required that nonmembers pay fair-share fees to the union. Fair-share fees, also known as agency fees, are fees collected from personal assistants who are represented by, but not members of, the union and earmarked for activities related to collective bargaining, as opposed to political or ideological activities. The Supreme Court has authorized the collection of fair-share fees by public employee unions. *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 232 (1977).

Plaintiffs objected to the collection of those fees and filed suit. Their complaint was dismissed, and that dismissal was affirmed by the Seventh Circuit. The Supreme Court reversed and remanded the case for further proceedings. *Harris*, 134 S.Ct. at 2644. Plaintiffs then filed an amended complaint and now move for class certification. SEIU estimates that the putative class would include approximately 80,000 personal assistants who paid approximately $32 million in fair-share fees from April 2008 to the present. [106] ¶¶ 26, 29.[1] Defendant SEIU

---

[1] Bracketed numbers refer to entries on the district court docket.

opposes class certification, while defendant Governor Rauner takes no position. *See* [176].

The Supreme Court held that the "First Amendment prohibits the collection of an agency fee from personal assistants in the Rehabilitation Program who do not want to join or support the union," *Harris*, 134 S.Ct. at 2644, but several issues are still pending. In particular, SEIU has asserted affirmative defenses, including good faith, unjust enrichment, estoppel, and the statute of limitations (to the extent plaintiffs seek a remedy for violations outside the applicable period). [90] at 4–5. If defendants are found liable for First Amendment violations, the remedy must be determined. Pursuant to 42 U.S.C. § 1983, plaintiffs seek nominal and compensatory damages from the union, and in particular, seek a full refund of all fair-share fees deducted from their pay. [79] at 11–12.

### III. Analysis

#### A. First Amendment Injury and the Proposed Class Definition

At the heart of the parties' arguments over class certification are the necessary elements of an injury in the context of compelled subsidization of third-party speech, and whether such an injury can be proven on a class-wide basis. "Section 1983 is a tort statute. A tort to be actionable requires injury." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Relatedly, "there can be no award of compensatory damages if there is no harm (i.e., no loss to compensate *for*)." *Gilpin v. Am. Fed'n of State, Cty., and Mun. Emps., AFL-CIO*, 875 F.2d 1310, 1314 (7th Cir. 1989) (emphasis in original).

The union insists that an individual cannot suffer a First Amendment injury for compelled subsidization unless she also subjectively opposed the payment at the time. Plaintiffs believe that a First Amendment injury occurs whenever an individual is compelled to subsidize the speech of another without prior authorization. And because the union received fair-share fees from nonmember personal assistants without their affirmative consent, plaintiffs conclude that all the nonmember personal assistants who paid fair-share fees suffered First Amendment injuries—their money was wrongfully seized whether they agreed with the union or not.

In *Knox v. Service Employees International Union, Local 1000*, 132 S.Ct. 2277 (2012), the Court decided whether a public union could collect a special fee, to be used for political activities, from nonmembers who had previously objected to subsidizing such activities, and what procedural safeguards the union must put in place to comport with the First Amendment. It ultimately held that the union had to first seek nonmembers' affirmative consent before collecting fees for political activities, because failing to do so "creates a risk that the fees paid by nonmembers will be used to further political and ideological ends with which they do not agree." *Knox*, 132 S.Ct. at 2290. The Court held that the First Amendment prohibited the fee-collection practice at issue, but it did so in the context of developing a procedural framework that would minimize the risk of First Amendment infringement. Although "[c]ourts 'do not presume acquiescence in the loss of fundamental rights,'" *id.* (quoting *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense*

6

*Bd.*, 527 U.S. 666, 682 (1999)), the Court did not hold that everyone from whom fees were taken suffered a First Amendment injury.

Implicit in the Court's reasoning on compelled subsidization is a requirement of the payor's contemporaneous subjective opposition. For example, the First Amendment prohibits public sector unions from extracting a loan from "unwilling" nonmembers. *Knox*, 132 S.Ct. at 2293. This suggests that a loan extracted from a willing nonmember would not encroach on the willing nonmember's free-speech rights. Opt-in procedures and obtaining affirmative consent minimizes the risk to First Amendment values that comes with compelled subsidies. *See id*. at 2295–96 (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 411 (2001)). But the harm to be avoided is the forced support of speech that the compelled person does not want to support. In invalidating the fair-share fees in this case, the Court relied on "the bedrock principle that, except perhaps in the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support." *Harris*, 134 S.Ct. at 2644. It follows that if a personal assistant wants to support the union, collecting a fair-share fee from her would not result in a First Amendment injury. Thus, to prove injury, and the complete constitutional tort, plaintiffs must prove contemporaneous subjective opposition to the compelled payments.

The possibility that not every individual included in the class definition was injured does not preclude class certification. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) ("[A] class will often include persons who have not

7

been injured by the defendant's conduct." (quoting *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009))). If the class includes a significant number of people who could have been injured, but were not, it may be certified. But if "a great many" or "a great number of" putative class members could not have been harmed by defendants' conduct, then the proposed class is too broad and should not be certified. *Kohen*, 571 F.3d at 677; *Messner*, 669 F.3d at 824.

The union provides compelling evidence that a substantial number of proposed class members did not object to paying the fair-share fee, and would have consented if they had been given a choice. These personal assistants could not have suffered a First Amendment injury. The majority of personal assistants in 2003 voted for union representation, and a majority ratified the CBA in 2008 and 2012. The union points out that 65% of the proposed class members who are still personal assistants have since joined the union. While views can change over time—and a decision to join the union at a later date does not guarantee that the person supported the union earlier—the union believes these people likely have always supported the union and would not have objected to the deduction of fair-share fees. Plaintiffs do not rebut this evidence; instead, plaintiffs argue that class members who support the union should opt out after certification. This procedure might be suitable if the class definition were not overly broad, but plaintiffs have the burden to demonstrate—with evidence—that class certification is appropriate. Without evidence to rebut the defense showing that a great many nonmembers who paid

fair-share fees had no subjective opposition to the union, the proposed class includes too many people who could not have been injured by the deduction.

Alternatively, if SEIU committed a complete First Amendment tort by taking fees without consent (whether or not the nonmember wanted to support the union), or if the proposed class simply includes people who were not (as opposed to could not have been) damaged, class certification—as currently proposed by plaintiffs—is nevertheless inappropriate under Rule 23.

### B. Rule 23(a)

"The general gate-keeping function of Federal Rule 23(a) ensures that a class format is an appropriate procedure for adjudicating a particular claim by requiring that the class meet the following requirements: (1) the class is so numerous that joinder of all members is impracticable (numerosity);[2] (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015).[3]

---

[2] The union does not challenge the numerosity requirement. According to defendant, the proposed class would contain more than 80,000 members. [106] ¶ 26. This satisfies the numerosity requirement of Rule 23(a).

[3] Plaintiffs must demonstrate that the proposed class is sufficiently definite such that its members are ascertainable. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). The class definition must be 1) precise, 2) defined by objective criteria, and 3) not defined in terms of success on the merits. *Id.* Plaintiffs' proposed class is precisely defined by union membership status and defendants' conduct, and the definition does not depend on the defendants' liability. The ascertainability requirement, which defendant does not challenge, is satisfied.

*1. Commonality and Typicality*

Commonality and typicality are frequently assessed together, as "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982)).

To satisfy Rule 23(a)'s commonality requirement, plaintiffs must show that the claims "depend upon a common contention that is capable of class-wide resolution." *Bell*, 800 F.3d at 374. And "class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek*, 764 F.3d at 756. Similarly, plaintiffs can satisfy the typicality requirement if they show that their claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

The plaintiffs had fair-share fees deducted without consent,[4] and in that respect, defendants' conduct gives rise to the same kinds of claim across the proposed class. The union argues that plaintiffs' claims are neither typical nor common because many class members had no objections to financially supporting the union. I agree that whether class members were injured (or what amount of damages would compensate for the injury, discussed below) is an individual question. But "[t]he fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class." *Bell*, 800 F.3d at 379. Rule 23(a) does not require that all issues be common to the class, or even the most important issue. *See Wal-Mart Stores, Inc.*, 564 U.S. 338 at 359. Classes may be certified even if "individual class members will still have to prove the fact and extent of their individual injuries." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 912 (7th Cir. 2003).

Although the claim as a whole cannot be resolved on a class-wide basis, there exist common issues that can, and Rule 23(c)(4) permits certification on particular issues. "If there are genuinely common issues . . . identical across all the claimants, . . . the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues

---

[4] Plaintiff Yencer-Price does not meet the typicality requirement because the union's records show that she has been paying union dues rather than fair-share fees. Although she disputes her union membership (and a copy of her union card is not in defendant's records) it does appear that she is not a person who had fair-share fees deducted, and thus is not a class member. The dispute over her union-membership status makes her claim "idiosyncratic or possibly unique" and makes her an unsuitable class representative. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014).

to individual follow-on proceedings." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) (quoting *Mejdrech*, 319 F.3d at 911). Whether defendant escapes liability because it acted in good faith based on the law in effect at the time, whether the doctrine of unjust enrichment precludes monetary relief, and whether plaintiffs should be estopped from seeking monetary relief because they accepted the benefits of the CBA's, are questions that are not dependent on the individualized inquiries. Plaintiffs' claims are typical of the proposed class's with respect to these common defenses. But in this case, plaintiffs seek class certification "primarily to require that SEIU-HCII return to personal assistants the monies wrongfully seized from them." [81] at 1. With this professed focus on the damages remedy, and without additional briefing on the prospect of narrower, issue-based class certification, I decline—at this time—plaintiffs' invitation to certify any alternative class I deem appropriate.

If class-wide compensatory damages is plaintiffs' goal, their proposal for class certification is not workable. As discussed above, I reject plaintiffs' argument that a First Amendment injury has already been established for each class member. But even if injury can be assumed, the extent of the injury—the amount of damages beyond nominal damages—will depend on the nonmembers' subjective beliefs. If the nonmember would have willingly paid a fair-share fee if given the choice, then the deduction did not cause a monetary loss to that nonmember.[5] The amount of fair-

---

[5] The union's evidence indicates there are many such people within the proposed class.

12

share fees these people paid would not be a measure of the interference in their First Amendment rights.

In addition, to the extent the compelled payment resulted in some tangible benefit to the nonmember from the union, the deduction may not be an accurate measure of loss. Compensatory damages are measured by the plaintiff's loss, not the defendant's gain, *see* 1 D. Dobbs, Law of Remedies § 1.1, p. 5 (2d ed. 1993), and so if the personal assistants received something of value, the net loss is not the amount of the fair-share deduction. *See Gilpin*, 875 F.2d at 1316 (discussing, as a matter of restitution, the prospect of offsetting improperly taken fees by the benefits obtained by the union's efforts). Perhaps the services received were not an adequate, or even partial, substitute for the money that plaintiffs paid. Or perhaps the loss of the opportunity to choose how to spend one's own money should never be measured by reference to the benefits coincidentally received. The point here is that the compensatory damages remedy that plaintiffs seek is not simply a matter of calculating full refunds of fair-share fees.

So even though plaintiffs' claims share common questions with the proposed class's, and are typical in that they involve fair-share fee deductions, it would not make sense to certify a class only to immediately enter a phase of individualized damages inquiries—likely leading to decertification of the class for reasons of adequacy and predominance.

13

*2. Adequacy*

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Rosario*, 963 F.2d at 1018).

Plaintiffs argue that they are adequate representatives of their proposed class because, in their view, they experienced the same First Amendment injury resulting from the same conduct as the rest of the class members and share with them an interest in not being compelled to pay fair-share fees without consent. The union contends that plaintiffs' requested relief and their anti-union ideology create a fundamental conflict between them and the rest of the proposed class, which includes union members and supporters, making plaintiffs inadequate representatives.

The union relies on *Gilpin*, 875 F.2d 1310, to argue that the relief sought by plaintiffs conflicts with the interests of the rest of the class, precluding class certification. *Gilpin*, another case sponsored by the National Right to Work Legal Defense Foundation, involved a challenge by nonmembers to the calculation of fair-share fees imposed by a union. *Id.* at 1312. In that case, the named plaintiffs sought a refund of the full fair-share fee amount—relief that was essentially punitive in nature because it exceeded actual damages. *Id.* at 1315. In upholding a denial of certification of a class of non-union members, the Seventh Circuit determined that

14

such punitive relief was aligned with the pronounced anti-union ideology of the Foundation rather than the goals of class members who opposed being overcharged but otherwise supported the existence and activities of the union. *Id.* at 1313.

*Gilpin* is not quite as on-point as defendant suggests because the compensatory damages remedy sought here—available only to those who did not wish to join or support the union—is not punitive and can be awarded to those who may not share plaintiffs' ideological opposition to the union, but still did not want to support the union with money.[6] But to avoid the problems of a fail-safe class definition, the proposed class necessarily includes people who do support the union and are in ideological conflict with the named plaintiffs. Each of the named plaintiffs believes that she did not receive any benefit from union representation, and would seek damages even if it hampered or destroyed the union in its representational capacity. [107-3] at 23–25, 28; [107-4] at 42, 44–45, 51; [107-5] at 24, 28. Plaintiffs Riffey and Yencer-Price testified that they did not want a union representing personal assistants at all. [107-3] at 24; [107-5] at 23. And plaintiff Watts accepted a national award from the Right to Work Foundation, whose goal is

---

[6] The union does put forth evidence suggesting that a full refund of all fair-share fees would be burdensome, and if plaintiffs' injury and damages theory were correct, it would cripple the union. SEIU collected roughly $32 million in fair-share fees from nonmember personal assistants during the six-year class period. [106] ¶ 26. In 2014, it collected approximately $7.3 million in union dues from members. *Id.* ¶ 27. The implication is that providing a full refund of fair-share fees would be difficult given its limited annual income. Plaintiffs' approach to remedy, while in the guise of compensatory damages, could be seen as a litigation strategy designed to undermine the union. But the union does not elaborate on either its ability to provide a refund or the effect a refund would have on its operations and activities. In any event, not every class member suffered a First Amendment injury that would entitle them to a refund, and a truly compensatory damages remedy would not be punitive.

to weaken or destroy public unions. [107-4] at 46–47; [107-8] at 2. In contrast, defendant submitted 57 declarations from personal assistants in the proposed class, from a variety of backgrounds, who say they support the union and did not object to the fair-share fees deducted from their paychecks. *See* [110]–[166]. Some even mistakenly thought they were members of the union while paying fair-share fees. *See* [122] ¶ 5; [135] ¶ 7; [145] ¶ 3; [148] ¶ 3; [161] ¶ 7. These class members do not want a refund and are worried about a large damages award's effect on the union. *See, e.g.*, [115] ¶ 6; [152] ¶ 7; [159] ¶ 9. The class includes current members of the union (formerly fair-share-fee-payors), and, the union argues, their views will not be fairly and adequately represented by people who would be undeterred by the prospect of the union's dissolution.

The union also relies on *Schlaud v. Snyder*, 785 F.3d 1119 (6th Cir. 2015) *cert. denied sub nom. Schlaud v. Int'l Union, UAW*, 136 S.Ct. 1512 (2016), to argue that a conflict of interest precludes class certification. In *Schlaud*, the Sixth Circuit upheld the denial of class certification under a similar set of facts because of a conflict of interest between the named plaintiffs and the rest of the class. *Id.* at 1128. The court emphasized the fact that the proposed class included union members, including "a substantial number" of workers who had voted in favor of the collective bargaining agreement requiring fair-share fees. *Id.* at 1125. Because members of the class were likely willing to financially support the union without compulsion, the court held that the named plaintiffs did not fairly and adequately represent their interests. *Id.* at 1128.

In response, plaintiffs say that their private motives and thoughts on unionization are irrelevant, because they do not affect the merits of the case. In their view, liability turns on the lack of affirmative consent to the fair-share fees, so they seek the same relief that absent class members are already entitled to. They argue that any ideological conflict between themselves and absent class members will only manifest itself in a split between those injured class members who want a remedy for their injuries and those who do not, and that those who do not want a remedy can simply opt out of the class. But as noted above, subjective support of the union, or lack thereof, for each absent class member is central to this case, and not just a factor in the decision to seek a remedy.

The Sixth Circuit's concern about certifying a class with people who were not damaged is less weighty here, in light of the Seventh Circuit's repeated admonition that class certification can be appropriate even when some class members experienced no harm and do not have valid claims. *See, e.g., Suchanek*, 764 F.3d at 757–58. In addition, the "adequacy of class representatives is an issue that can be examined throughout the litigation." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 715 (7th Cir. 2015). But in the end, both *Schlaud* and *Gilpin* point out that a class representative who wants to undermine the union is not likely to be a suitable representative for a group that includes people who have no such hostility. If Riffey and Watts seek damages to weaken the union, they are not likely to faithfully identify and inform class members who would want to opt out. This is a First Amendment case in which subjective beliefs are critical to resolution of the

17

remaining issues, yet plaintiffs seek to represent a class that includes many people who would not want to associate with plaintiffs. The named plaintiffs are not adequate representatives of such a class.[7]

### C. Rule 23(b)(3)

Because plaintiffs seek to certify the class pursuant to Rule 23(b)(3), they must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). "Predominance is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (quoting *Messner*, 669 F.3d at 815). "Ultimately, the court must decide whether classwide resolution would substantially advance the case." *Suchanek*, 764 F.3d at 761.

Damages—the primary reason plaintiffs seek class certification—cannot be resolved in a single adjudication, and the damages questions for 80,000 potential

---

[7] At this point, it is not necessary to address the adequacy of class counsel. *See* Fed. R. Civ. P. 23(g)(4). Like the named plaintiffs, if class counsel want to advance an agenda to weaken the union through class-wide damages, they would not adequately represent the interests of class members who are current union members. But if a more limited, issue-based class were certified, these concerns would be minimized. The attorneys—who have the skills and resources to be class counsel—would be ethically bound to exercise their independent legal judgment (not take direction from the National Right to Work Legal Defense Foundation) and represent the interests of the class. Plaintiffs and their counsel may be adequate representatives for a class that does not depend on the subjective beliefs of class members. For example, whether the union can assert a good faith defense is a question that named plaintiffs and their attorneys should be able to litigate without intra-class conflict. But, as noted above, this prospect has not been briefed by the parties.

class members would predominate over other questions. Predominance might not be an issue if a class were certified solely to adjudicate the affirmative defense of good faith before determining liability, but as currently conceived, plaintiffs' pursuit of class-wide refunds is the most significant issue remaining in the case. Now that plaintiffs have prevailed on the central First Amendment question—whether fair-share fees can be deducted without consent—the predominant issue is the scope of relief, and that is an individual, not a class, question.

In addition, plaintiffs' proposed class presents significant manageability issues. *See* Fed. R. Civ. P. 23(b)(3)(D). Personal assistants are in a profession with high turnover. [106] ¶ 29. Obtaining evidence from each class member would be difficult, *see* [106] ¶ 32 (reporting difficulty with phone numbers and addresses for personal assistants), and plaintiffs propose no plan that would successfully determine on a class-wide basis whether fair-share-fee-paying personal assistants did not want to join or support the union. In light of my conclusion that subjective beliefs about the fair-share fees are relevant, indeed paramount, to the availability and amount of relief here, individual interests in controlling the First Amendment claim would be significant. *See* Fed. R. Civ. P. 23(b)(3)(A). And there is no longer any reason to concentrate each proposed class member's claim for damages in a single forum, *see* Fed. R. Civ. P. 23(b)(3)(C), because, armed with *Harris*, any individual who did not want to join or support the union can pursue individual relief (with the potential benefit of 42 U.S.C. § 1988 fee-shifting). Plaintiffs have not met

19

their burden to demonstrate predominance and superiority for their proposed class under Rule 23(b)(3).

## IV. Conclusion

Plaintiffs' motion for class certification [80] is denied. The proposed class definition is too broad because it contains a great number of people who could not have been injured by defendants' conduct. But even if injury can be presumed, plaintiffs' pursuit of refunds on behalf of a class requires individualized determinations that predominate over the remaining common questions. This denial is without prejudice to plaintiffs revising their proposed class definition or seeking class certification on non-damages issues.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 6/7/16